# United States Court of Appeals
## For the First Circuit

No. 10-2177

MIGUEL SÁNCHEZ-RODRÍGUEZ,

Plaintiff, Appellant,

v.

AT&T MOBILITY PUERTO RICO, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Boudin, and Dyk,[*]
Circuit Judges.

Juan Rafael González-Muñoz, with whom González Muñoz Law Offices, PSC, María E. Margarida-Franco, and Margarida Franco Law Office, were on brief for appellant.
Todd J. Shill, with whom John R. Martin, and Rhoads & Sinon LLP, were on brief for appellee.

March 8, 2012

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. Plaintiff-Appellant Miguel Sánchez-Rodríguez ("Sánchez") appeals the district court's award of summary judgment to his employer, AT&T Mobility Puerto Rico, Inc. ("AT&T"), on his claims of religious discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000a-2000e ("Title VII"). Although we disagree with some aspects of the district court's decision, we conclude that the grant of summary judgment for AT&T was correct. We further conclude that the district court did not err in denying Sánchez's request for additional discovery in response to AT&T's motion for summary judgment.

## I. Background

### A. Facts

We recount the undisputed facts to which the parties stipulated in the district court.

Sánchez was hired by AT&T[1] in March of 2000 as an Installation Technician. In February of 2001, Sánchez transferred to a Retail Sales Consultant position in the Caguas-Cayey-Humacao-Fajardo sales region ("Caguas region"), where he sold cellular telephones and accessories at service kiosks located in shopping centers. His yearly salary between 2003 and 2006 ranged from

---

[1] According to the parties, Sánchez was initially hired by Cellular One, which eventually became Cingular, which in turn became AT&T.

$23,129.59 to $26,425.47. Sánchez also earned yearly commissions ranging from $10,653.03 to $18,938.17.

During 2006 and 2007, AT&T staffed three hundred Retail Sales Consultants throughout Puerto Rico, including over forty in the Caguas region. Between September 2006 and June 2007, AT&T had hired over fifty-three Retail Sales Consultants, thirty of whom were full-time employees. These new hires included ten Retail Sales Consultants for the Caguas region, of whom five were full-time employees.

In September of 2006, Sánchez informed his supervisors and AT&T's Human Resources ("HR") department that he had become a Seventh Day Adventist. As a Seventh Day Adventist, Sánchez had a religious obligation to abstain from work on Saturdays and attend Sabbath services. Therefore, he requested an accommodation in his work schedule by being allowed to take Saturdays off. In October of 2006, Sánchez presented a letter from his church confirming and explaining his religious observance of the Sabbath. On approximately November 21, 2006, AT&T's HR department sent Sánchez a letter stating that his position necessitated that he work on rotating Saturday shifts and that it would be a hardship on AT&T to grant Sánchez his requested accommodation.

In lieu of a change in his schedule, AT&T offered Sánchez two different positions that would not require him to work on Saturdays: Representative 1 for Customer Service ("Rep 1") and

-3-

Business Sales Specialist. The Rep 1 position typically required Saturday hours, but AT&T determined that it would not be a hardship to allow Sánchez to take Saturdays off. The Business Sales Specialist position did not require work on Saturdays or Sundays. The annual wages for the Rep 1 and Business Sales Specialist positions were $23,088 and $22,970, respectively. However, neither position offered the opportunity to earn commissions. Thus, Sánchez declined both offers, since his income would significantly decrease.

In early 2007, Sánchez applied for two other positions at AT&T in Puerto Rico, but was not interviewed for either position. In February of 2007, Sánchez presented another letter from his church confirming his observance of the Sabbath. Sánchez also filed a charge with the Equal Employment Opportunity Commission ("EEOC") office in San Juan, Puerto Rico, alleging religious discrimination.

In March of 2007, Sánchez informed his supervisor that he had been trying to find co-workers who were willing to swap shifts with him and take his Saturday shifts, but that he was unable to do so. Sánchez stated that he was therefore forced to violate AT&T's attendance policy by not working his Saturday shifts. Sánchez's supervisor told him that working Saturdays was a requirement of his job. Sánchez's supervisor also notified AT&T's HR department about the situation.

-4-

On approximately April 5, 2007, AT&T's Director of HR sent Sánchez a letter. The letter described "working rotating shifts (including Saturdays)" as an "essential function" of Sánchez's position. The letter acknowledged that Sánchez had declined the two positions offered by AT&T because of the reduction in salary those positions would entail. The letter noted that Sánchez had continued to miss work on Saturdays, but that no adverse disciplinary action had been taken for these absences. However, it warned Sánchez that letting him miss work on Saturdays "[was] not an option for it undermine[d] the scheduling/attendance requirements." Therefore, the letter said that AT&T would start disciplining Sánchez for any additional Saturdays he missed.

The letter then stated:

> It is important for the Company to maintain a neutral scheduling system and not to burden other employees into working more than their share of Saturdays, among others. In an effort to accommodate your necessities we are going to allow shift swaps with your co-workers. Be mindful that the Company cannot impose a shift swap on the employees. It would be in a voluntary fashion. We shall try this alternative for a period of two (2) months to determine whether it is workable or not.
>
> You will need to be active in obtaining voluntaries. The Company will assist you in providing the employees schedules; allowing you to advertise your need for swaps on the bulleting board and in any other form that you deem necessary and is acceptable. After the conclusion of the two (2) months trial period, we shall meet to discuss the outcome and whether it gave us the needed results or

whether other measures are needed to accommodate your needs.

There is no evidence in the parties' stipulation or anywhere in the record that AT&T ever actually gave Sánchez the "employees['] schedules."

In May of 2007, Sánchez informed the HR department that he could not find workers to swap shifts with him, and that he would therefore be absent on Saturdays. In response, that same month, Sánchez's supervisor placed him on active disciplinary status. The supervisor also warned Sánchez that further measures, including termination, would be taken if he continued to miss work on Saturdays. In the same month, Sánchez's supervisor also sent him eight emails advising him that his sales figures were below expectations.

In June of 2007, Sánchez applied for a Retail Sales Consultant position in Worcester, Massachusetts; Sánchez's application was rejected on the ground that he "did not meet basic qualifications" for the position, even though it was the same position he held in Puerto Rico. That same month, the HR department emailed Sánchez, again informing him that his absences would be subject to the attendance policy. Sánchez was asked to meet with HR to discuss his absenteeism, although the record does not indicate whether this meeting took place. Finally, on June 20, 2007, Sánchez tendered his letter of resignation, stating, "An opportunity had showed [sic] up I [sic] which I can have the

Saturday[;] in addition it represent[s] an opportunity for my professional growth."

## B.  Procedural History

On December 26, 2007, Sánchez filed a Complaint against AT&T in the U.S. District Court for the District of Puerto Rico. Sánchez alleged religious discrimination in violation of Title VII. On April 16, 2008, Sánchez filed an Amended Complaint which added a claim under Title VII that AT&T retaliated against Sánchez for his February 2007 EEOC complaint.[2]

The district court issued a Case Management Order ("CMO") on July 30, 2008.  Under the CMO, all discovery in the case had to be completed by April 30, 2009.  The CMO also stated that any motion requesting an extension of the discovery deadline would have to be filed "well in advance of the deadline."  Counsel for both sides participated in an Initial Scheduling Conference ("ISC") with the district court judge on September 26, 2008.  The district judge told the parties to "see if [they] can come up with a Stipulation of Facts that would permit [them] to file Cross-Motions for Summary Judgment."  However, the judge also told the parties: "In case you can't come up with a proposed Stipulation of Facts, then let me know, and then you can proceed with Discovery."  In addition, the court ordered AT&T to provide certain discovery that Sánchez had

---

[2]  Sánchez also included various claims under Puerto Rico law, but those claims are not before us on appeal.

requested, including information about Sánchez's earnings and about the salary in the other positions AT&T offered him.

After some additional discovery, but without any depositions having been taken, the parties filed a Joint Motion Submitting Stipulation of Facts ("Stipulation") on April 7, 2009. The Stipulation recounted the facts mentioned in Section I(A), supra. The parties then filed cross-motions for summary judgment on April 30, 2009, which was also the discovery deadline the district court had set. Although Sánchez had never previously asked for an extension of the discovery deadline, he now asked, in a footnote at the end of his motion, for additional discovery regarding AT&T's efforts to accommodate him. AT&T, for its part, argued that it did reasonably accommodate Sánchez, and pointed to its offer of other positions and to the April 5, 2007 letter in which it offered to let Sánchez swap shifts.

AT&T filed its opposition to Sánchez's motion on May 21, 2009, and Sánchez filed his opposition to AT&T's motion the following day. In his opposition, Sánchez made almost no attempt to respond to the merits of AT&T's argument. Instead, Sánchez argued that the case could not be decided on summary judgment motions at that time. Sánchez contended that AT&T's motion raised a number of issues of material fact that could not be decided on the existing record. Therefore, Sánchez requested additional discovery under Fed. R. Civ. P. 56(f), which permitted a court to

order further discovery if a party could show that "it cannot present facts essential to justify its opposition" to a motion for summary judgment.[3]

Sánchez attached two exhibits to his opposition. The first was an affidavit from one of his attorneys asserting that Sánchez "ha[d] not been able to conduct discovery in order to obtain the necessary evidence to establish his claim of religious discrimination." The second was an unsworn declaration from Sánchez himself (the "Sánchez Affidavit"). In this affidavit, Sánchez claimed, inter alia, that (1) AT&T had never assisted him with shift-swapping; and (2) other Retail Sales Specialists had been granted specific shift assignments for non-religious reasons.

---

[3] At the time the summary judgment motions in this case were pending, Rule 56(f) provided:

> When Affidavits are Unavailable. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3) issue any other just order.

Rule 56 was amended in 2010 in order to "improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments. In the current version, what was subdivision (f) now appears in slightly modified form in subdivision (d).

On June 1, 2009, AT&T moved for leave to file a reply to Sánchez's opposition to its motion for summary judgment. AT&T's proposed reply mainly challenged Sánchez's request for additional discovery under Rule 56(f). The district court denied AT&T's motion on the same day. However, the court also issued an order denying additional discovery and stating that the court would "decide this case on the Stipulated Facts and the briefs filed."

The district court granted AT&T's motion for summary judgment on August 5, 2010. See Sánchez-Rodríguez v. AT&T Wireless, 728 F. Supp. 2d 31 (D.P.R. 2010). The district court noted that it had rejected Sánchez's request for additional discovery, and then said that it would "rule on the motions for summary judgment based on the submitted stipulation of facts, as previously agreed upon by the parties." Id. at 35 (emphasis added). The court held that because the parties had stipulated facts, the court could "decide any significant issues of material fact that [it] discover[ed]." Id. at 38 (quoting Bos. Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urban Dev., 768 F.2d 5, 11 (1st Cir. 1985)).

On Sánchez's Title VII religious discrimination claim, the court held that even though Sánchez had demonstrated a prima facie case of discrimination, AT&T had shown either: (1) that it offered Sánchez a reasonable accommodation, or alternatively, (2) that accommodating Sánchez would have placed an undue burden on

-10-

AT&T. As stated by the district court, to establish a prima facie case of religious discrimination, the employee must show that: "(1) a bona fide religious practice conflicts with an employment requirement; (2) that he or she brought the practice to the [employer's] attention; and (3) that the religious practice was the basis for an adverse employment decision." Id. at 38 (quoting E.E.O.C. v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2004)). There was no dispute that Sánchez satisfied the first and second prongs, but AT&T argued that it took no adverse employment action against Sánchez. See id. at 39. The district court held that Sánchez satisfied the third prong because the disciplinary actions that AT&T took against him starting in May of 2007 were adverse employment actions. See id. at 39-40.

Once an employee has made out a prima facie case of discrimination, the employer must show that it offered a reasonable accommodation or that a reasonable accommodation would be an undue burden. Unión Independiente, 279 F.3d at 55. The district court held that the alternate positions that AT&T had offered to Sánchez were not reasonable accommodations "because [those] positions offered a steep decrease in earnings." Sánchez-Rodríguez, 728 F. Supp. 2d at 42. However, the court held that allowing Sánchez to arrange voluntary shift swaps with other employees was a reasonable accomodation. Id. at 42-43. Furthermore, assuming arguendo that

none of AT&T's proposed accommodations were reasonable, the court held that AT&T had shown that allowing Sánchez to take Saturdays off would have created an undue hardship for AT&T. Specifically, the court credited AT&T's assertions that Saturday was a high-activity day for AT&T and that the company relied on a neutral scheduling system to avoid burdening employees with a disproportionate number of Saturday shifts. See id. at 44. The court therefore dismissed the discrimination claim.

On the retaliation claim, the district court held that Sánchez had made out a prima facie case of retaliation under Title VII, but that AT&T had successfully rebutted that case. To establish a prima facie case of retaliation, an employee must show that: "(1) he engaged in protected conduct under Title VII; (2) he experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse employment action." Id. (citing Gu v. Bos. Police Dep't, 312 F.3d 6 (1st Cir. 2002)). The court held that because of the temporal proximity between Sánchez's EEOC complaint and various subsequent adverse employment actions -- rejecting Sánchez's applications for other positions and disciplining him for absenteeism -- Sánchez had satisfied his initial burden. See id. at 45. This shifted the burden to AT&T to show that it had a non-discriminatory reason for its adverse employment actions. Id. However, the court found that

AT&T had demonstrated non-discriminatory reasons for its actions, and thus dismissed the retaliation claim.  Id.[4]

Sánchez now appeals the denial of his request for additional discovery and the grant of summary judgment for AT&T. AT&T, in addition to arguing that the judgment below should be upheld, has moved for sanctions against Sánchez and his attorneys for what AT&T claims are Sánchez's misstatements of the record.

## II.  Discussion

Sánchez makes two main arguments on appeal.  First, he argues that the district court erred by not granting his request for additional discovery under Fed. R. Civ. P. 56(f).  Second, he argues that the district court committed procedural and substantive errors in granting summary judgment to AT&T.  We first address the Rule 56(f) issue.  We then address Sánchez's various challenges to the grant of summary judgment.

## A.  Standard of Review

We review a district court's denial of a request for additional discovery under Rule 56(f) -- as it existed in 2009 -- for abuse of discretion.  See Mir-Yepez v. Banco Popular de P.R., 560 F.3d 14, 15 (1st Cir. 2009).  Under the abuse of discretion standard, we will not reverse a district court's discovery order

---

[4] Because the court had dismissed all of Sánchez's federal claims, it dismissed his Puerto Rico law claims on the ground that it no longer had supplemental jurisdiction over those claims.  See id. at 46.

-13-

unless it appears that the order "was plainly wrong and resulted in substantial prejudice to the aggrieved party." Universal Commc'n. Sys. v. Lycos, Inc., 478 F.3d 413, 425 (1st Cir. 2007) (quoting Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 38 (1st Cir. 2000)).

We review a district court's grant of summary judgment de novo, "resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the nonmoving party." Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Cortés-Rivera v. Dep't of Corr. & Rehab. of P.R., 626 F.3d 21, 26 (1st Cir. 2010). "[W]e are not married to the trial court's reasoning but, rather, may affirm on any independently sufficient ground made manifest by the record." Cahoon v. Shelton, 647 F.3d 18, 22 (1st Cir. 2011). "The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986)). However, "a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden." DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896

-14-

F.2d 5, 8 (1st Cir. 1990)) (internal quotation marks omitted).
Rather, "the party seeking to avoid summary judgment 'must be able to point to specific, competent evidence to support his claim.'" Soto-Ocasio v. Fed. Exp. Corp., 150 F.3d 14, 18 (1st Cir. 1998) (quoting August v. Offices Unlimited., Inc., 981 F.2d 576, 580 (1st Cir. 1992)).[5]

## B. Denial of Rule 56(f) Request

Sánchez argues that the district court erred in refusing to grant his Rule 56(f) request because he could not respond to AT&T's motion without additional discovery. In Celotex, the Supreme Court stated that Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322 (emphasis added). The Court further noted that a party confronted with a "premature motion for summary judgment" can invoke Rule 56(f), which (at that time) "allowe[d] a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." Id. at 326. Sánchez contends that AT&T's

[5] That the parties cross-moved for summary judgment does not affect our standard of review. Since the court granted AT&T's motion, we apply our analysis to the grant of summary judgment to AT&T.

-15-

motion was premature because it contained factual assertions that were not supported by the record. For example, AT&T's motion asserted that its staffing system was complex and that the system would be disrupted if Sánchez were given Saturdays off. Sánchez contends that the district court should have given him additional discovery time under Rule 56(f) in order to enable him to gather facts to respond to these assertions.

We find that the district court was correct to deny Sanchez's request under Rule 56(f). Under the then-existing Rule 56(f), a party confronted with a motion for summary judgment had to show due diligence in seeking discovery in order to be granted additional discovery time. See Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 5 (1st Cir. 2004) ("[A] party seeking to postpone the adjudication of a summary judgment motion on the ground of incomplete discovery must explain why, in the exercise of due diligence, he has been unable to obtain the necessary information."); Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994) ("Rule 56(f) is designed to minister to the vigilant, not to those who slumber upon perceptible rights."). Here, Sánchez has failed to demonstrate why he could not have obtained the information he needed to contest AT&T's motion prior to the close of discovery.

Sánchez complains that the district court "deprived [him] of the opportunity to conduct discovery on material facts" and

"became obfuscated with disposing the action via summary judgment."
Yet the record flatly contradicts Sánchez's assertions. As noted
above, at the ISC, the district court informed the parties: "In
case you can't come up with a proposed Stipulation of Facts, then
let me know, and then you can proceed with Discovery." Sánchez
never indicated to the district court that he could not agree with
AT&T on a Stipulation. In addition, Sánchez did obtain discovery
from AT&T, including the initial disclosures required under Fed. R.
Civ. P. 26 and various documents that Sánchez requested from AT&T
at the ISC.

Because we find that the district court's denial of
Sánchez's Rule 56(f) request was not wrong, much less "plainly
wrong," we find no abuse of discretion by the district court.
Universal Commc'n. Sys., 478 F.3d at 425.[6]

## C. Adjudication on "Case Stated" Basis

Sánchez complains that the district court improperly
decided the case on a so-called "case stated" basis. "In a case
stated, the parties waive trial and present the case to the court
on the undisputed facts in the pre-trial record. The court is then
entitled to 'engage in a certain amount of factfinding, including
the drawing of inferences.'" TLT Constr. Corp. v. RI, Inc., 484
F.3d 130, 135 n.6 (1st Cir. 2007) (quoting United Paperworkers

---

[6] AT&T argues that the form and timing of Sánchez's request were
also improper. Because we find that Sánchez did not demonstrate
the necessary diligence, we need not reach AT&T's other arguments.

-17-

Int'l Union, Local 14 v. Int'l Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)). However, such cases are "somewhat unusual." Id. (quoting United Paperworkers Int'l Union, Local 14, 64 F.3d at 31) (internal quotation marks omitted). Therefore, "in cases where the parties have not explicitly presented their case to the court as a case stated, we must 'inquire into the intentions of the parties and the district court judge.'" Id. (quoting García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 644 (1st Cir. 2000)).

Sánchez argues that the district court was wrong to decide the case on a "case stated" basis because the parties did not agree to have the district court do so. Sánchez notes that under our case law, the mere fact that the parties filed cross-motions for summary judgment does not necessarily mean that they intended to submit the case on a case stated basis. See Bos. Five Cents Sav. Bank, 768 F.2d at 11-12 ("[T]o stipulate a record for decision allows the judge to decide any significant issues of material fact that he discovers; to file cross-motions for summary judgment does not allow him to do so."). While Sánchez acknowledges that he agreed to a stipulation of facts, he denies that the stipulation was intended to constitute a complete set of undisputed material facts such that a case-stated adjudication might be appropriate.

Although the district court did not use the term "case stated" in its opinion, it appears that the court applied a "case

-18-

stated" standard in making its decision. The court noted its belief that the parties "have agreed to provide a joint stipulation of facts, upon which the Court will decide the present case." Sánchez-Rodríguez, 728 F. Supp. 2d at 38. The court also explained that "[s]tipulating facts for decision 'allows the judge to decide any significant issues of material fact that he discovers.'" Id. (quoting Bos. Five Cents Sav. Bank, 768 F.3d at 11-12).

We agree with Sánchez that it was error for the district court to decide this case on a "case-stated" basis. "Case-stated" resolution is appropriate "when the basic dispute between the parties concerns only the factual inferences that one might draw from the more basic facts to which the parties have agreed, and where neither party has sought to introduce additional factual evidence or asked to present witnesses." United Paperworkers Int'l Union, Local 14, 64 F.3d at 31. Despite Sánchez's lack of diligence in pursuing discovery, he did attempt to introduce additional factual evidence in the form of the Sánchez Affidavit. Moreover, it is clear that Sánchez's dispute with AT&T concerns something more than "factual inferences" that can be drawn from "basic facts" to which he and AT&T agreed. Rather, Sánchez disputed AT&T's assertions that certain "facts" were true at all, such as the "fact" that AT&T had a neutral scheduling system that might be disturbed by giving him Saturdays off.

That the district court erred in applying a case-stated standard does not mean that the ruling below must be reversed, however. Instead, we proceed to consider de novo whether summary judgment for AT&T was warranted, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of Sánchez, the non-movant. Kuperman, 645 F.3d at 73.

## D. Title VII Discrimination Claim

Title VII forbids an employer "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his . . . religion . . . ." 42 U.S.C. § 2000e-2(c)(1). The statute defines "religion" to include: "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j). "Thus, in general terms, Title VII requires employers . . . to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees." Unión Independiente, 279 F.3d at 55.

We apply a two-part framework in analyzing religious discrimination claims under Title VII. "First, the plaintiff must make [his] prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Cloutier v. Costco Wholesale Corp.,

-20-

390 F.3d 126, 133 (1st Cir. 2004). "Once the plaintiff has established this prima facie case, the burden shifts to the [employer] to show that it made a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship." Unión Independiente, 27 F.3d at 55 (emphasis added).

The district court found that Sánchez had established his prima facie case, Sánchez-Rodríguez, 728 F. Supp. 2d at 39-40, and AT&T concedes this point for purposes of argument on appeal. Thus, we consider whether the facts, viewed in the light most favorable to Sánchez, demonstrate either that AT&T offered a reasonable accommodation or that accommodating Sánchez would have resulted in undue hardship.

"[C]ases involving reasonable accommodation turn heavily upon their facts and an appraisal of the reasonableness of the parties' behavior." Rocafort v. IBM Corp., 334 F.3d 115, 120 (1st Cir. 2003) (discussing reasonable accommodation in the Americans With Disabilities Act context) (quoting Jacques v. Clean-Up Grp., Inc., 96 F.3d 506, 515 (1st Cir. 1996)). Furthermore, other Circuits have held that when analyzing whether an employer provided a reasonable accommodation, a court should take a "totality of the circumstances" approach and consider whether the combination of accommodations provided by the employer was reasonable. See, e.g., Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024, 1030 (8th

-21-

Cir. 2008) ("What is reasonable depends on the totality of the circumstances and therefore might, or might not, require elimination of a particular, fact-specific conflict.") (emphasis added); Hudson v. W. Airlines, Inc., 851 F.2d 261, 266 (9th Cir. 1988) (examining the accommodations available to employee and concluding that "[a]ll of these accommodations together" provided the employee with a reasonable accommodation) (emphasis added). We believe that this "totality of the circumstances" approach is sensible. Thus, to determine whether AT&T offered Sánchez a reasonable accommodation, we will analyze whether the combination of accommodations offered by AT&T was reasonable.

AT&T points to three ways in which it tried to accommodate Sánchez: (1) by offering him the Rep 1 and Business Sales Specialist positions as a substitute for his Retail Sales Consultant position; (2) by allowing him to swap shifts with his co-workers; and (3) by refraining from disciplining him for absenteeism prior to May of 2007. Sánchez contends that AT&T's offer of other positions was not reasonable because those positions offered lower compensation. He also contends that the offer of shift-swapping was not reasonable because AT&T did not provide the schedules of other employees, as it had promised.

However, we need not decide whether either of these accommodations was reasonable in isolation, because they were not offered in isolation -- rather, they were offered as part of a

series of attempts by AT&T to accommodate Sánchez. Many courts have found similar accommodations or combinations of accommodations to be reasonable under Title VII. See, e.g., Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 77-78 (1977) (holding that employer reasonably accommodated Seventh Day Adventist employee by, inter alia, agreeing to permit any shift exchanges that employee could arrange on his own); Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1323-24 (11th Cir. 2007) (finding that employer reasonably accommodated Seventh Day Adventist employee by allowing shift swaps, refraining from disciplining employee for absenteeism for three months, and offering transfer to another position with reduced benefits that did not require work on the Sabbath); Thomas v. Nat'l Ass'n of Letter Carriers, 225 F.3d 1149, 1156-57 (10th Cir. 2000) (finding that where employer "remained sympathetic to [the plaintiff]'s religious requirements, approved all voluntary schedule swaps that [the plaintiff] was able to arrange, and imposed no restrictions or impediments on [the plaintiff]'s ability to attempt to arrange further voluntary schedule swaps with other employees," employer did "all that Title VII reasonably requires the [employer] to do") (citing 29 C.F.R. § 1605.2(d)(1)(I)); Eversley v. MBank Dallas, 843 F.2d 172, 176 (5th Cir. 1988) (finding reasonable accommodation where employer delayed planned schedule changes in order to accommodate employee and offered lower-paying position that did not conflict with

Sabbath); Hudson, 851 F.2d at 26 (provisions set forth in a collective bargaining agreement which "provided a means by which [an employee] could bid upon work schedules, work domiciles, vacation time, and personal leave . . . [and] allowed [an employee] to modify her schedule by trading her entire schedule or specific days off with other employees," taken together, provided the employee with a reasonable accommodation); Smith v. Pyro Mining Co., 827 F.2d 1081, 1088 (6th Cir. 1987) (holding that as long as employee has no religious constraints against arranging his own schedule swap with other employees, employer reasonably accommodates employee by simply allowing swaps).

Taken together, we believe that the efforts made by AT&T constituted a reasonable accommodation of Sánchez's religious beliefs. Therefore, we affirm the judgment of the district court on the discrimination claim. We need not reach the question of whether accommodating Sánchez would have been an undue hardship for AT&T.

## E. Title VII Retaliation Claim

Sánchez claims that AT&T retaliated against him for filing his EEOC complaint in February of 2007. Title VII prohibits employers from "discriminat[ing] against any of [their] employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). A plaintiff

-24-

establishes a prima facie case for retaliation by showing that: (1) he engaged in protected conduct under Title VII; (2) he experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse employment action. Gu, 312 F.3d at 13-14. See also White v. N.H. Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000). Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to demonstrate that there was a non-discriminatory reason for the adverse employment action. Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 14 (1st Cir. 2007). If the employer demonstrates such a reason, the burden returns to the plaintiff to show that the non-discriminatory reason was merely a pretext for discrimination. Id.

The district court held that Sánchez established a prima facie case. Sánchez-Rodríguez, 728 F. Supp. 2d at 45. However, the court then held that AT&T had demonstrated non-discriminatory reasons for its adverse employment actions and that Sánchez had failed to show that these reasons were pretextual. Id. at 46. On appeal, Sánchez argues that the district court incorrectly concluded that Sánchez had not shown that AT&T's reasons were pretextual. We review the district court's decision de novo, and we can affirm it on any ground apparent in the record. Cahoon, 647 F.3d at 22.

Sánchez easily satisfies the first prong of the prima facie case, since he engaged in protected activity by filing a charge with the EEOC.   See, e.g., Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007) (recognizing that plaintiff "undoubtedly" engaged in a protected activity when he contacted the EEOC alleging discrimination).  Sánchez points to three different adverse actions that he claims are causally connected to his protected activity: (1) AT&T's failure to interview him for the "Small Biz Advisor" position; (2) AT&T's offer of unreasonable accommodations; and (3) disciplinary actions for absenteeism.  We explore in turn whether these actions constitute retaliation.

The parties stipulated that Sánchez applied for the "Small Biz Advisor (Small Business Advisor)" position on March 1, 2007, but that he was "not scheduled for interview" for this position.  There is no evidence in the record regarding why Sánchez was not interviewed.  A failure to hire can be an "adverse employment action" for the purposes of a Title VII retaliation claim.  See Vélez v. Janssen Ortho, LLC, 467 F.3d 802 (1st Cir. 2006).  To show that a failure to hire is an adverse employment action, a plaintiff must show that "(1) she applied for a particular position (2) which was vacant and (3) for which she was qualified."  Id. at 803 (emphasis added). Because demonstrating an "adverse employment action" is part of the prima facie case that a

-26-

<u>plaintiff</u> has the burden of demonstrating, the plaintiff in turn has the burden of showing the three aforementioned factors from <u>Vélez</u>.

Here, the record is entirely devoid of any information regarding whether Sánchez was qualified for the Small Biz Advisor position or whether there was even an opening for such a position. Because Sánchez is the party who bears the burden of demonstrating these factors, this lack of evidence weighs against Sánchez, even though AT&T was the summary judgment movant. See <u>Pérez</u> v. <u>Volvo Car Corp.</u>, 247 F.3d 303, 310 (1st Cir. 2001) (on summary judgment, "an absence of evidence on a critical issue weighs against the party -- <u>be it the movant or the nonmovant</u> -- who would bear the burden of proof on that issue at trial") (emphasis added). Thus, we conclude that Sánchez cannot demonstrate that the failure to interview him for the Small Biz Advisor position was an "adverse employment action" for the purposes of his retaliation claim.

Next, Sánchez argues that the accommodations offered by AT&T -- the alternate positions, not imposing discipline for failure to show up for work on Saturdays up to May of 2007, and the shift-swapping -- were so unreasonable that the mere offer of them constituted an adverse employment action. We disagree. An adverse employment action in the retaliation context is any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Carmona-Rivera</u> v. <u>Puerto Rico</u>, 464

F.3d 14, 20 (1st Cir. 2006) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Hypothetically, an employer could offer an "accommodation" that is so objectively unreasonable or unworkable, or such an insult to an employee's religious beliefs, that a reasonable worker would be dissuaded from pursuing a charge of discrimination. But that is not the case here. As discussed above, the accommodations offered by AT&T were reasonable.

Finally, Sánchez argues that AT&T retaliated against him by disciplining him for his absenteeism. The Stipulation reflects that AT&T (1) placed Sánchez on "active disciplinary status," (2) sent him emails advising him that his sales quotas were below expectations, and (3) warned him that his absences would be subject to the company's attendance policy. Whether an admonishment constitutes an adverse employment action may depend on a number of factors, including in particular its practical consequences; but, as the issue does not affect the ultimate disposition here, we can bypass the issue and assume arguendo that in this case Sánchez suffered an adverse employment action. We also find that Sánchez has satisfied the "causal connection" prong of his prima facie case. "'Very close'" temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection. Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (citing Clark Cnty Sch.

<u>Dist.</u> v. <u>Breeden</u>, 532 U.S. 268, 273-74 (2001)).  Here, Sánchez filed his EEOC complaint in February of 2007 and was disciplined in May of 2007.  We believe this proximity is close enough to suggest causation, especially given the inferences we must draw in Sánchez's favor.

Because Sánchez has made a <u>prima facie</u> case of retaliation based on the discipline he received in May of 2007, the burden shifts to AT&T to show that it had a non-discriminatory reason for disciplining him.  We find that AT&T easily satisfies this burden.  Sánchez admits he was absent from work on Saturdays, and in turn AT&T disciplined him for his absenteeism.  The burden thus shifts back to Sánchez to show that AT&T's reasons were merely pretextual.  Here, Sánchez's claim founders.  To defeat summary judgment in a retaliation case, "a plaintiff must point to <u>some</u> evidence of retaliation by a pertinent decisionmaker." <u>Randlett</u> v. <u>Shalala</u>, 118 F.3d 857, 862 (1st Cir. 1997).  Here, Sánchez points to no evidence whatsoever, and as noted previously, made no effort to discover any such evidence.

Since Sánchez has failed to point to any evidence that AT&T's reasons for disciplining him were merely a pretext for religious discrimination, we affirm the district court's grant of summary judgment to AT&T on the retaliation claim.

### III. **Sanctions**

AT&T has moved for sanctions against Sánchez and/or his lawyers on the ground that Sánchez's appeal brief to this Court "grossly misstates" the record regarding the discovery proceedings before the district court. Sánchez has not responded to AT&T's motion.

AT&T requests sanctions under Fed. R. App. P. 38 and under 28 U.S.C. § 1927. Under Fed. R. App. P. 38, "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." An appeal is frivolous "if the result is obvious or the arguments are wholly without merit." Pimentel v. Jacobsen Fishing Co., Inc., 102 F.3d 638, 640 (1st Cir. 1996) (citations and quotations omitted) (emphasis in original). In addition, "[a]lthough Rule 38 speaks in terms of frivolousness, we have awarded costs and attorneys' fees pursuant to it for 'what can only be characterized as blatant misrepresentations in appellant's brief.'" Thomas v. Digital Equip. Corp., 880 F.2d 1486, 1491 (1st Cir. 1989) (quoting Ortiz Villafañe v. Segarra, 797 F.2d 1, 2 (1st Cir. 1986)).

Under 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case

> unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

We have held that filing a frivolous appeal qualifies as "unreasonably and vexatiously multipl[ying] the proceedings." See Cruz v. Savage, 896 F.2d 626, 635 (1st Cir. 1990).

Sánchez's appeal was clearly not frivolous. Sánchez's arguments were not completely meritless, even though they were ultimately unsuccessful. Thus, we will not sanction Sánchez or his attorneys for frivolousness.

We do note that Sánchez's brief contains incorrect statements about the discovery process before the district court. Yet we do not find these misstatements to be so extreme as to warrant monetary sanctions in this case. However, we warn Sánchez's counsel that future conduct of this nature will not be tolerated. If Sánchez's lawyers had any concerns about the district court's discovery plan, they should have raised those concerns with the district court. It is not appropriate for attorneys to try to correct their own mistakes or lack of diligence at the trial court level by trying to re-write the record on appeal.

## IV. Conclusion

The district court's grant of summary judgment to AT&T on Sánchez's Title VII religious discrimination claim is affirmed.

The district court's grant of summary judgment to AT&T on Sánchez'

Title VII retaliation claim is affirmed.

**<u>Affirmed</u>**.