# United States Court of Appeals
## For the First Circuit

No. 24-1289

GEORGE RODRIQUE, II,

Plaintiff, Appellant,

v.

HEARST COMMUNICATIONS, INC.; and HEARST STATIONS, INC.,

Defendants, Appellees,

KATIE DISHNICA, Director, Massachusetts Department of
Unemployment Assistance,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Rikelman, Selya, and Kayatta,
Circuit Judges.

Ilya I. Feoktistov, with whom Law Office of Ilya Feoktistov
was on brief, for appellant.

Stephen H. Yuhan, with whom Jonathan R. Donnellan, Hearst
Corporation, Office of General Counsel, Brian Whiteley, and
Barclay Damon LLP were on brief, for appellees.

January 17, 2025

**RIKELMAN**, <u>Circuit Judge</u>. George Rodrique, II sued his employer, Hearst Stations, Inc. ("Hearst"), after it denied his request for a religious exemption from the company's COVID-19 vaccination requirement and then terminated him for refusing to receive the vaccine. Rodrique claims that Hearst's failure to grant his exemption request violated Title VII of the Civil Rights Act of 1964, which prohibits employers from discriminating against their employees based on religion.

The district court granted Hearst's motion for summary judgment, concluding that Hearst had not discriminated against Rodrique because his objections to the vaccine were not religious. In its ruling, the court did not reach the second part of the analysis of a religious accommodation claim under Title VII -- that is, whether granting Rodrique's request would have imposed an undue hardship on Hearst.

Rodrique appeals, arguing that his objections were religious and that exempting him from the vaccine requirement would not have imposed any undue hardship on Hearst. Before us, he distills his no-undue-hardship argument into a single contention: Hearst provided insufficient evidence that the COVID-19 vaccine reduces transmission of the virus.

In conducting our analysis, we assume that Rodrique has shown a religious objection to the vaccine requirement. But because the undisputed facts in the record demonstrate that Hearst

- 2 -

reasonably relied on objective medical evidence in concluding that the vaccine reduces the likelihood of transmitting the virus, we reject Rodrique's no-undue-hardship argument. Thus, we affirm the district court's order granting summary judgment to Hearst, albeit on different grounds.

## I.    BACKGROUND

### A.    Relevant Facts

Rodrique worked as a photographer for WCVB-TV, a broadcast television news station that serves the greater Boston area and is owned and operated by Hearst. He started at WCVB-TV in 2016 and worked there continuously until his termination in November 2021, after he refused to obtain a COVID-19 vaccine and Hearst did not grant his request for a religious exemption.

Hearst has several layers of parent companies, some of which played a role in the events at issue in this appeal. Hearst is wholly owned by Hearst Television, Inc. (HTV), which is a wholly owned subsidiary of Hearst Communications, Inc. (HCI). HCI, in turn, is a wholly owned subsidiary of the Hearst Corporation.

When the COVID-19 pandemic began in early 2020, Hearst, like other businesses, evaluated how to respond. HTV formed a committee (the "Committee") to advise its broadcast stations about pandemic procedures and precautions. The Committee included Senior Vice President of Human Resources Kristin Hansen, along

with HTV's Human Resources Director and other company leaders and employees.

Hearst's COVID-19 procedures and guidance evolved as the pandemic continued. On February 1, 2021, Committee members emailed HTV general managers a memorandum addressing frequently asked questions about the company's plan for a vaccination policy and providing general information about vaccine availability and effectiveness. In August of that year, after the vaccine became widely available, HTV implemented a "Proof or Test" policy, requiring that employees either show proof of vaccination or undergo weekly COVID-19 tests. WCVB-TV covered the cost of the weekly tests on its health insurance plans and reimbursed any employees who were not on the company's plans for their out-of-pocket expenses. Further, all employees were compensated for the time they took to get tested. Consistent with this policy, a WCVB-TV Human Resources coordinator emailed Rodrique on August 12, 2021, informing him that the company had not received proof of his vaccination and that he would be required to undergo COVID-19 testing on a weekly basis.

As part of its pandemic response in 2021, WCVB-TV had increased the number of station vehicles it owned and leased to employees so that they could travel to photoshoot locations in separate vehicles. As of September 2021, WCVB-TV allowed vaccinated employees to travel together in a single vehicle, but

because Rodrique was unvaccinated, his team was excluded. It cost WCVB-TV over $7,000 for Rodrique to maintain his own vehicle from May 2021 to November 2021, including over $2,000 in fuel.

Hearst's "Proof or Test" policy ended in late 2021, when its vaccination requirement began and most employees resumed in-person work. On September 13, senior executives of the Hearst Corporation emailed employees to explain that, going forward, the company would require employees and guests entering the offices of any of its wholly owned U.S. businesses to be vaccinated against COVID-19. And the next day, an email from HTV's President confirmed that all employees would need to be fully vaccinated against COVID-19 "as defined by the [Centers for Disease Control (CDC)]" unless an employee obtained an approved exemption as an accommodation.

In response to Hearst's shift in policy, Rodrique initially sought assistance in obtaining a medical exemption from his doctor, but he was unsuccessful. He then submitted a request to Hearst for a religious exemption. On his exemption form, he explained that, although he did not subscribe to any particular organized religion, he had sincerely held religious beliefs that were "an amalgamation of many ideologies and spiritual practices," and that these beliefs prohibited him from receiving the vaccine. Rodrique identified two specific reasons why obtaining the vaccine would violate his religious beliefs: the COVID-19 vaccine was

- 5 -

developed "utilizing fetal cell lines from aborted babies," in contravention of his religious opposition to abortion, and the vaccine would require introducing "chemicals into [his] body" in contravention of "the biblical maxim of 'my body is my temple[;] do nothing to cause its destruction.'"

Rodrique's religious exemption request was reviewed by Hansen and other company officials. On November 5, 2021, Hansen informed Rodrique that HTV had denied his request. Hansen explained that HTV had:

> assumed that [Rodrique] ha[d] identified a sincerely held religious belief that conflicts with the vaccination policy . . . . [But it] ha[d] conducted an individualized assessment of [his] situation and ha[d] determined that allowing [him] to be in [HTV's] offices unvaccinated on an indefinite basis create[d] significant risk of substantial harm to the health or safety of [its] workplace and employees.

Rodrique did not receive the vaccine and was deemed to have resigned effective November 19, 2021.

## B.    Legal Proceedings

After filing a complaint against Hearst with the Equal Employment Opportunity Commission (EEOC), Rodrique sued Hearst and other defendants asserting various violations of federal and state law, including religious discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and the congruent Massachusetts statute, Mass. Gen. Laws ch. 151B, § 4. Elaborating

- 6 -

on his religious objections to the vaccine, and especially his "body is a temple" objection, Rodrique alleged that his beliefs "require[d] him to avoid polluting his body" with "substances that do not exist in nature." Following motions to dismiss by several defendants, which are not at issue here, only claims against Hearst and HCI remained. Hearst and HCI then moved for summary judgment on the remaining claims, and the district court granted their motion in full. Rodrique v. Hearst Commc'ns, Inc., No. 22-cv-12152, 2024 WL 733325, at *4 (D. Mass. Feb. 22, 2024).

On appeal, Rodrique challenges only the district court's grant of summary judgment on his religious discrimination claims under Title VII and Mass. Gen. Laws ch. 151B, § 4. The district court held that Rodrique's religious discrimination claims failed because Rodrique had not established that his opposition to the COVID-19 vaccine was in fact religious. We affirm the district court's summary judgment ruling on different grounds.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where the evidence shows that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment de novo, considering the facts in the light most favorable to Rodrique as the non-moving party and drawing all reasonable

- 7 -

inferences in his favor. See, e.g., Boykin v. Genzyme Therapeutic Prods., LP, 93 F.4th 56, 58 (1st Cir. 2024); MacRae v. Mattos, 106 F.4th 122, 132 (1st Cir. 2024).

### B.  Religious Discrimination Under Title VII

Title VII declares it an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). Under the statute, religion "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j).

Rodrique alleges that Hearst violated Title VII when it denied his request for a religious exemption from its COVID-19 vaccination requirement and subsequently terminated his employment for refusing to receive the vaccine. We "appl[y] a two-part framework in analyzing religious discrimination claims under Title VII." Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023) (quoting Sánchez-Rodríguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 12 (1st Cir. 2012)). At the initial step, a plaintiff "must make [a] prima facie case that a bona fide religious practice conflicts

- 8 -

with an employment requirement and was the reason for the adverse employment action."  Id. (underlining omitted) (quoting Sánchez-Rodríguez, 673 F.3d at 12).  "[T]he burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship."  Id. (alteration in original) (quoting Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004)).[1]

The district court, without reaching the issue of whether granting the exemption request would have imposed an undue hardship on Hearst, determined that Rodrique had not made out his prima facie case.  See Rodrique, 2024 WL 733325, at *2. Specifically, it concluded that Rodrique's asserted religious beliefs were not religious at all and instead reflected "a personal medical judgment about the necessity of COVID-19 vaccination" expressed in religious language.  Id.  In its ruling, the court relied in part on the fact that Rodrique admitted to taking other

_____

[1]  The district court did not provide a separate analysis of Rodrique's religious discrimination claim under Mass. Gen. Laws ch. 151B, § 4.  On appeal, Rodrique does not quibble with the district court's approach and describes Chapter 151B as a Title VII "cognate."  As neither party has identified relevant differences between religious discrimination claims under Title VII and Chapter 151B, nor provided any analysis specific to Chapter 151B, we treat the claims as rising and falling together.  See Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 n.9 (1st Cir. 2016) (declining to provide a separate 151B analysis where the parties had not described any meaningful distinction between the statutes).

- 9 -

medications when he viewed them as medically necessary, without questioning whether they were developed with fetal cells and despite knowing that they were artificial and man-made. Id. It also concluded that the record contained no credible medical evidence that the COVID-19 vaccines were developed using fetal cells. Id. at *2 n.6.

Determining whether a belief is religious is "a difficult and delicate task." Cloutier, 390 F.3d at 132 (quoting Thomas v. Rev. Bd. of Ind. Emp. Sec. Div., 450 U.S. 707, 714 (1981)); see also Fallon v. Mercy Cath. Med. Ctr. of Se. Pa., 877 F.3d 487, 490 (3d Cir. 2017). But this case does not require us to grapple with this difficult issue. On appeal, we are free to affirm the district court's ruling "on any ground made manifest by the record, including one not reached by the District Court." Walsh v. TelTech Sys., Inc., 821 F.3d 155, 161 (1st Cir. 2016); see also Cloutier, 390 F.2d at 128 (affirming summary judgment for employer in religious discrimination case under Title VII on alternative undue hardship argument). We are especially well positioned to affirm on an alternative ground where, as here, the parties have argued and addressed that alternative ground on appeal. See Germanowski v. Harris, 854 F.3d 68, 74 (1st Cir. 2017). We therefore assume, without deciding, that Rodrique's objection to the COVID-19 vaccine was religious. We nevertheless affirm the district court's ruling on undue hardship grounds.

Turning then to the undue hardship inquiry, we note that Hearst admits that it never offered to accommodate Rodrique's religious beliefs. Thus, to succeed on summary judgment and avoid Title VII liability, Hearst must show that there was no genuine dispute of material fact that granting Rodrique's exemption request would have imposed an undue hardship on its business. See Lowe, 68 F.4th at 719. In Groff v. DeJoy, the U.S. Supreme Court clarified that the undue hardship standard requires the employer to "show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." 600 U.S. 447, 470 (2023).

This case, however, does not turn on whether the costs of any accommodation would have been substantial in relation to the conduct of WCVB-TV's business. Hearst has averred that in-person work was an essential aspect of Rodrique's job as a photographer, providing separate field crew vehicles for offsite shoots was a substantial expense, paying for Rodrique's weekly COVID-19 tests was costly, and abiding last-minute isolation of employees in cases of infection would have strained WCVB-TV's resources, especially given the job's frequent daily deadlines and tight time constraints. On appeal, Rodrique does not dispute that these claimed burdens and expenses would be substantial for WCVB-TV's business.

Instead, Rodrique contends that Hearst has not proffered admissible evidence showing that the vaccine actually protects against the transmission of COVID-19. As Rodrique frames the issue, if the vaccine does not reduce the likelihood of COVID-19 transmission -- as opposed to merely mitigating symptoms, for example -- then Hearst suffers no undue hardship by granting him an exemption.[2] And in Rodrique's view, only expert testimony can support this conclusion. Rodrique emphasizes that proving if and how the vaccine works is a scientific question, and he points us to the Supreme Court's decision in Bragdon v. Abbott, 524 U.S. 624 (1998), to guide our analysis.

With Bragdon in mind and having reviewed the record, we disagree with Rodrique that Hearst did not provide legally sufficient evidence to demonstrate that vaccination reduces the likelihood of transmitting the virus. "Undue hardship under Title VII requires employers 'to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees.'" Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 18 (1st Cir. 2024) (quoting Sánchez-Rodríguez, 673 F.3d at 12). Because the record demonstrates that Hearst relied "on the objective, scientific information available to [it]," with particular

---

[2] At oral argument, Rodrique forthrightly conceded that if the undisputed record evidence demonstrates that the COVID-19 vaccine reduces the likelihood of virus transmission, his undue hardship argument would fail.

attention to "the views of public health authorities," we hold that it acted reasonably when it determined that vaccinated employees are less likely to transmit COVID-19 than unvaccinated employees. See Bragdon, 524 U.S. at 649-50.

Rodrique argues, however, that Hearst needed to do more than rely on objective medical evidence, including public health guidance. In Rodrique's view, each employer should be required to prove to a factfinder in every similar Title VII litigation that the vaccine reduces the likelihood of transmitting the virus. But Rodrique points to no authority suggesting that this is what Title VII requires. In fact, Bragdon counsels the opposite approach.

Bragdon is an Americans with Disabilities Act (ADA) case. See 524 U.S. at 628. Under section 302 of the ADA, an entity need not accommodate an individual with a disability if they "pose[] a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3). In Bragdon, the Supreme Court considered whether a dentist violated the ADA when he declined to treat a patient with HIV. 524 U.S. at 628-29. The Court did not hold that, in order to prevail, the dentist had to prove to the factfinder that HIV could be transmitted during a dental procedure. Rather, the Court explained, he needed to demonstrate that his decision to decline treatment was "reasonable in light of the available medical evidence." Id. at 650. That objective medical evidence included "the views of public health authorities, such as

- 13 -

the U.S. Public Health Service, CDC, and National Institutes of Health," which the Court described as "of special weight and authority." Id. Although noting that the medical guidance of U.S. public health organizations was not conclusive, the Court stated that a party who disagrees with the "prevailing medical consensus" would have to "refute it by citing a credible scientific basis for deviating from the accepted norm." Id. Critically, the Court cabined the relevant inquiry to the medical and scientific evidence available at the time the dentist made his decision. Id. at 653. Thus, the logic of Bragdon, which Rodrique contends we should apply, would not require Hearst to prove to a factfinder that vaccinated workers are less likely to transmit the virus in the workplace. Instead, it would require Hearst to demonstrate that it looked to the objective medical evidence available to it in the fall of 2021 in reasonably concluding that the vaccine reduces the likelihood of transmitting COVID-19, and that therefore granting Rodrique an exemption would have caused it undue hardship.

The record is replete with undisputed evidence that Hearst reasonably relied on objective medical evidence, including public health guidance from the federal government and the Commonwealth of Massachusetts, when it set its vaccine policy. For example, Hansen explained in her declaration in support of summary judgment ("Hansen Declaration") that the Committee paid

attention to CDC guidance, including its "different quarantine and testing requirements based on vaccination status," and concluded "that vaccination proved to be one of the best protective measures against the spread of COVID-19 and would keep [HTV's] workforce healthy and safe while allowing [HTV's] stations to continue operating." In turn, the relevant CDC guidance in the second half of 2021 explained that "a growing body of evidence suggests that fully vaccinated people are less likely to have asymptomatic infection or transmit [COVID-19] to others." CDC, Interim Public Health Recommendations for Fully Vaccinated People (July 21, 2021), https://perma.cc/5SLP-MFS2.[3] Hearst similarly stated in its responses to Rodrique's interrogatories that it concluded the vaccine reduces the likelihood of transmission because of "publicly available findings and updates from the CDC and other government agencies," and that Hearst "had communications with the Massachusetts Government concerning its plans for keeping its employees safe during the COVID-19 pandemic." And company communications implementing the vaccine requirement pointed out that it was "in keeping with the overwhelming opinion of the medical science community," that the company had defined "fully

---

[3] We can take judicial notice of what information was available on government websites at a particular time. See In re Fin. Oversight & Mgmt. Bd. for P.R., 60 F.4th 9, 13 n.3 (1st Cir. 2023); Child.'s Health Def., Inc. v. Rutgers, the State Univ. of N.J., 93 F.4th 66, 71 n.3 (3d Cir. 2024).

vaccinated" to align with the CDC's definition, and that the company's leadership was "monitor[ing] guidance from all applicable public health authorities." It was reasonable for Hearst to rely on these sources to conclude that the vaccine reduces the likelihood of transmitting the virus, and therefore that exempting employees from the vaccination requirement would pose a threat to the health of others. See also EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws § L (Mar. 1, 2022), https://perma.cc/QR9N-KCSP (assuming, in EEOC Title VII guidance, that employers may consider "the risk of the spread of COVID-19 to other employees or to the public" as costs of permitting unvaccinated employees to remain in the workplace).

Rodrique argues that Hearst's evidence consists entirely of inadmissible lay opinion, but we do not agree. Pointing to the Hansen Declaration, he contends that Hearst is relying heavily on the opinion of one of its employees. Because Hansen was not qualified as an expert witness, Rodrique suggests, she was not permitted to provide her opinion about scientific matters like the ability of the COVID-19 vaccine to reduce the likelihood of viral transmission. In making this argument, he relies on Federal Rule of Evidence 701, which permits non-expert witnesses to offer opinions when they are "rationally based on the witness's

perception" but not when they are "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(a), (c).

But Hansen's statements were not opinions at all, let alone opinions based on scientific or technical knowledge. Her statement that the Committee, of which she was a member, "was involved in reviewing [company] practices and adjusting them as additional information became known, including . . . medical data[ and] CDC guidance," was a factual statement based on her experience in her Human Resources role. See United States v. DiMarzo, 80 F.3d 656, 659 (1st Cir. 1996) (distinguishing statements of fact from opinions). Hansen's subsequent statement that "the Committee believed that vaccination [was] one of the best protective measures against the spread of [] COVID-19" is also not an opinion because it merely describes Hearst's conclusion. See United States v. Powers, 702 F.3d 1, 12 (1st Cir. 2012) (holding that a witness did not proffer inadmissible opinion testimony when recounting his understanding of a factual issue); United States v. Morton, 391 F.3d 274, 277 (D.C. Cir. 2004) (holding that testimony about a witness's belief was not opinion testimony when offered to prove the witness's reason for behaving in accordance with that belief). It is therefore outside the scope of Rule 701.

Moreover, Rodrique's undue hardship argument fails because no medical evidence in the summary judgment record

contradicts Hearst's conclusion that vaccinated people are less likely to infect others. Rodrique himself introduced into the record a Los Angeles County web page stating that "[v]accinating not only protects you, but may also protect your family, friends, and those in our community most vulnerable to severe disease from COVID-19." He also submitted an academic journal publication that found "[v]accination reduces the risk of delta variant infection and accelerates viral clearance." There is nothing in the record to the contrary.[4]

Thus, we conclude that there is no genuine dispute of material fact related to Hearst's undue hardship defense. To be clear, our holding is a narrow one. It arises from the unique posture of this case, where Rodrique has staked his undue hardship argument on his claim that Hearst has not presented competent evidence that vaccinated people are less likely to transmit COVID-19. Because Rodrique has not challenged Hearst's evidence that accommodating his exemption request would be a substantial burden if the vaccine does reduce the likelihood of transmitting

---

[4] In his reply brief, Rodrique points to several sources outside the record in an attempt to establish that the COVID-19 vaccine does not reduce the risk of transmission. However, none of these sources were before the district court. See Geoffroy v. Town of Winchendon, 959 F.3d 1, 6 (1st Cir. 2020) ("[W]e do not rely on any facts not before the district court at summary judgment.").

- 18 -

the virus, Hearst is entitled to summary judgment on Rodrique's religious discrimination claims.[5]

### III. CONCLUSION

For all these reasons, we **<u>affirm</u>** the district court's grant of summary judgment for Hearst.

---

[5] Both parties agree that Rodrique did not appeal the portion of the district court's judgment related to his claims against HCI, and, as a result, HCI is not a proper party to this appeal, even though it is listed in the case caption. Thus, we say nothing more on this score.