# United States Court of Appeals
## For the First Circuit

No. 24-1148

AMANDA J. BAZINET,

Plaintiff, Appellant,

v.

BETH ISRAEL LAHEY HEALTH, INC., and
BETH ISRAEL DEACONESS HOSPITAL-MILTON, INC.

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Angel Kelley, U.S. District Judge]

---

Before

Gelpí, Montecalvo, and Aframe,
Circuit Judges.

Richard Cullin Chambers, Jr., and Joseph Spinale, with whom Chambers and Spinale were on brief for appellant.

Scott Alan Roberts, with whom Samuel R. Gates, Tavish M. Brown, and Hirsch Roberts Weinstein, LLP were on brief, for appellees.

---

August 13, 2024

---

**AFRAME**, **Circuit Judge**. Fortunately, pandemics are, to use a favored expression from this Court, "hen's-teeth rare." E.g., United States v. Blodgett, 872 F.3d 66, 72 (1st Cir. 2017) (quoting United States v. Polk, 546 F.3d 74, 76 (1st Cir. 2008)); Costa v. INS, 233 F.3d 31, 38 (1st Cir. 2000). COVID-19 demonstrated, however, the countless decisions that institutions must make when a pandemic does strike. These decisions were largely intended to preserve public safety in emergency circumstances but also had to comply with the pre-existing constitutional, statutory, and regulatory regimes that generally govern societal affairs.

It is unsurprising, given the challenges posed by COVID-19, that, in the aftermath of the pandemic, some of the decisions made led to litigation. Indeed, this Court recently resolved multiple appeals stemming from institutional actions taken during the COVID-19 pandemic. See, e.g., Skoly v. McKee, 103 F.4th 74 (1st Cir. 2024); Ablordeppey v. Walsh, 85 F.4th 27 (1st Cir. 2023); Brox v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 83 F.4th 87 (1st Cir. 2023); Lowe v. Mills, 68 F.4th 706 (1st Cir. 2023). This is another appeal in that line.

In 2021, Plaintiff Amanda J. Bazinet worked as an executive office manager at Beth Israel Deaconess Hospital in Milton, Massachusetts. In response to COVID-19, the Hospital adopted a mandatory vaccine policy. Bazinet asserted a religious

objection to taking the vaccine and sought an accommodation. The Hospital rejected Bazinet's accommodation request, which led to the termination of her employment. In due course, Bazinet brought a civil action asserting, among other claims, that the Hospital committed religious discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and the Massachusetts anti-discrimination law, Mass. Gen. Laws ch. 151B, § 4 (2018) ("the religious discrimination claims").[1]

On its own motion, the district court dismissed the religious discrimination claims for failing to state a claim. See Fed. R. Civ. P. 12(b)(6). The court ruled that Bazinet's complaint failed to allege that she maintained a sincerely held religious belief that prevented her from taking the COVID-19 vaccine. Alternatively, the court held that, as a matter of law, the Hospital would suffer an undue hardship by granting Bazinet's request for an accommodation from the vaccine requirement.

Bazinet appeals the dismissal of her religious discrimination claims. We vacate the district court's order. The complaint sufficiently alleged that taking the vaccine would violate Bazinet's religious beliefs. Moreover, determining

---

[1] The Massachusetts statute prohibiting employment discrimination based on religion "has been interpreted largely to mirror Title VII." Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 131 (1st Cir. 2004). Neither party has identified a material distinction between the federal and state laws so for purposes of this appeal, we will consider the claims jointly.

whether an undue hardship would result from the Hospital excusing Bazinet from the vaccine requirement cannot be accomplished at this preliminary stage of the litigation.

**I.**

Because this appeal arises from the dismissal of the complaint for failure to state a claim, we draw the material facts from Bazinet's complaint and the documents expressly referenced therein. See Banco Santander de P.R. v. López-Stubbe (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003). In describing the facts, we "indulge all reasonable inferences that fit [Bazinet's] stated theory of liability." Id.

As already mentioned, the Hospital employed Bazinet as an executive office manager when the COVID-19 pandemic began. Bazinet continued to work for the Hospital at the "zenith" of the pandemic, relying on the Hospital's assurances that wearing masks would provide adequate protection.

In August 2021, the Hospital announced its "Mandatory Vaccine Policy." The Policy required all Hospital employees to have received the vaccine or at least begun the two -dose vaccine protocol by the end of October 2021. An employee who failed to comply with the Policy would be placed on fourteen-day administrative leave until the employee came into compliance. The Hospital would deem any employee to have "voluntarily terminated" his or her employment if the employee failed to comply with the

- 4 -

Policy within the fourteen-day period.  Bazinet alleged that voluntary termination was a "self-serving label" selected by the Hospital and, in fact, the Hospital terminated the employment relationship with non-compliant employees.

The Mandatory Vaccine Policy provided for certain exemptions, including for medical and religious reasons.  The Policy provided that an employee who sought a religious exemption would not be placed on leave or have their employment terminated while the exemption request remained pending.

Bazinet timely submitted the Hospital's "Request for Religious Accommodation - Mandatory Vaccine Policy" in which she sought exemption from the COVID-19 vaccine requirement.  Bazinet indicated on the form that she (1) maintained sincerely held religious beliefs, practices, or observances that prevented her from receiving the vaccine; (2) understood that, if the Hospital approved her exemption request, she would follow the Hospital's masking and other infection control requirements; and (3) also understood that, if the Hospital did not grant her exemption request, it would engage her in an interactive process seeking to identify a reasonable accommodation that would not cause an undue hardship.

Bazinet attached to her accommodation request form a letter describing her religious objection to taking the COVID-19 vaccine.  She began the letter by indicating that she is a

"Christian who believes in Jesus Christ and His holy word, the Bible." She then alleged that the makers of the "COVID-19 vaccines currently available developed and confirmed their vaccines using fetal cell lines, which originated from aborted fetuses." Based on that allegation, Bazinet concluded that "[p]artaking in a vaccine made from aborted fetuses [would make her] complicit in an action that not only offends, but . . . is an aberration to [her] Christian faith." In support of her conclusion, Bazinet identified a series of "quotes from the Lord" which prevented her from taking the vaccine based on her belief that the vaccine was developed using aborted fetuses.

Despite the statement on the accommodation form that the Hospital would engage in an interactive process to attempt to identify a reasonable accommodation, the Hospital denied Bazinet's request for an accommodation without engaging in any further process. The Hospital told Bazinet that her proposal to wear masks and take periodic COVID-19 tests was inadequate and that allowing Bazinet to work without the vaccine would cause the Hospital to suffer an undue hardship. After the Hospital denied Bazinet's accommodation request, it terminated her employment.

Bazinet's complaint asserted a series of claims against the Hospital in addition to the religious discrimination claims. The Hospital moved to dismiss all claims, except for the religious discrimination claims. In due course, the district court issued

- 6 -

a written order granting the Hospital's motion to dismiss. Bazinet does not challenge those rulings here.

In that same order, the district court noted that, while the Hospital had not moved to dismiss the religious discrimination claims, it was considering doing so on its own motion. The court indicated that Bazinet's complaint had failed to sufficiently allege that "her reluctance to be vaccinated [was] grounded in sincerely held religious beliefs." The court also observed that Bazinet's claim was likely to fail because the accommodations she proposed -- masking and periodic testing -- would probably cause the Hospital undue hardship. The court provided Bazinet with a chance to respond to its concerns.

In her response, Bazinet attached the accommodation form and accompanying letter referenced in her complaint to argue that she adequately alleged that a sincerely held religious belief prevented her from taking the vaccine. She also argued that the complaint did not provide an adequate basis for deciding the undue hardship question and that discovery should be permitted.

The district court thought otherwise. The court concluded that Bazinet had failed to allege in her complaint the "necessary factual details about [her] religious views and/or her beliefs which preclude her from taking the vaccine." It also determined that it should not consider the information in Bazinet's accommodation form and letter because Bazinet had presented those

documents too late. But, even if the court had considered those documents, it ruled that Bazinet's claim "would still not be viable because there is no accommodation that [Bazinet] could have offered that would not have caused [the Hospital] to suffer an undue hardship." As a result, the court dismissed Bazinet's religious discrimination claims with prejudice. Bazinet appealed.

## II.

Bazinet begins her appeal with a threshold claim. She says that the parties had agreed that the Hospital would not challenge the sufficiency of the religious discrimination claims at the motion to dismiss stage. She contends that agreement with the Hospital displaced the district court's authority to dismiss the religious discrimination claims under Fed. R. Civ. P. 12(b)(6). The Hospital, for its part, denies that there was any such agreement. We need not decide what, if any, agreement the parties reached because any agreement between the parties could not displace the district court's ability to rule on the legal question of whether Bazinet's complaint failed to state a claim.

Parties "may not stipulate to the legal conclusions to be reached by the court." Tex. Instrument Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995) (quoting Saviano v. Comm'r of Internal Revenue, 765 F.2d 643, 645 (7th Cir. 1985)). That is because "[i]ssues of law are the province of courts, not of parties to a lawsuit." Id.

District courts retain the power to dismiss complaints sua sponte for a failure to state a claim. Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002) (quoting Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R., 144 F.3d 7, 13-14 (1st Cir. 1998)). That is because whether a complaint adequately states a claim under Fed. R. Civ. P. 12(b)(6) presents a legal question, see Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996), which, as just mentioned, is "the province of courts," Tex. Instrument Fed. Credit Union, 72 F.3d at 928. Thus, the parties cannot stipulate away the district court's ability to dismiss a complaint for failure to state a claim.

Bazinet's own citation demonstrates the error in her argument. She too cites Tex. Instrument Fed. Credit Union to highlight the proposition that "parties to a lawsuit are free to stipulate to factual matters." Id. (quoting Saviano, 765 F.2d at 645). But a dismissal for failure to state a claim is not a factual matter. It is a legal conclusion in which the court determines that the facts alleged, even if true, are inadequate to state a claim for relief. See Frese v. Formella, 53 F.4th 1, 5-6 (1st Cir. 2022). This is precisely the sort of legal question to which the parties cannot bind the district court on the answer. Thus, even assuming the parties had reached an agreement that the Hospital would not seek to dismiss the religious discrimination

claims, the district court was still free to take up the matter on its own motion.

That brings us to the nub of the dispute -- whether the district court properly exercised its authority by dismissing Bazinet's religious discrimination claims under Fed. R. Civ. P. 12(b)(6).  We review the district court's dismissal order de novo. Rivera v. Kress Stores of P.R., Inc., 30 F.4th 98, 102 (1st Cir. 2022).

Sua sponte dismissals "are strong medicine[] and should be dispensed sparingly."  Chute, 281 F.3d at 319 (quoting González-González v. United States, 257 F.3d 31, 33 (1st Cir. 2001)). Generally, we will vacate a sua sponte dismissal "unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond."  Garaylade-Rijos v. Municipality of Carolina, 747 F.3d 15, 23 (1st Cir. 2014) (quoting Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R., 144 F.3d 7, 14 (1st Cir. 1998)).  Here, the district court provided Bazinet with the required notice and opportunity to respond before ordering dismissal.  In that response, Bazinet attached the request for religious accommodation and supporting letter that she referenced in her complaint.

In evaluating the dismissal order, we consider the facts as alleged in Bazinet's complaint and the content of documents she sufficiently referenced in the complaint.  See Freeman v. Town of

Hudson, 714 F.3d 29, 36 (1st Cir. 2013). In conducting this review, we "ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7, 11-13 (1st Cir. 2011)). This is all in service of our ultimate objective to determine whether Bazinet's complaint sets forth plausible claims of religious discrimination, bearing in mind that a court should not dismiss a complaint with properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those [alleged] facts is improbable." Ocasio-Hernández, 640 F.3d at 12 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

To establish her religious discrimination claims, Bazinet must first show "that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Lowe, 68 F.4th at 719 (quoting Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 12 (1st Cir. 2012)). If Bazinet makes that showing, the burden shifts to the Hospital to show that it "offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." Id. (quoting Cloutier, 390 F.3d at 133).

- 11 -

The district court ruled that Bazinet's claim foundered from the start because she failed to allege that she maintained a religious practice that conflicted with the Hospital's mandatory vaccine requirement. The court considered the complaint wanting because its text offered nothing more than an assertion that Bazinet "has sincerely held religious beliefs which place her in conflict with the provisions of the . . . Policy and prevent her from receiving the injections" required thereunder.

We need not determine whether such an unelaborated assertion may be insufficient on its own to allege a religious practice or belief in support of a religious discrimination claim because the district court also should have considered the documents expressly referenced in the complaint in which Bazinet requested a religious accommodation. Thus, the information in these documents should have been included when evaluating the sufficiency of the complaint. See Freeman, 714 F.3d at 36. The Hospital acknowledged this point both in its brief and at oral argument.

In her accommodation request, Bazinet explained her religious objection to being vaccinated. She stated her understanding that presently available COVID-19 vaccines were developed using fetal cell lines that originated from aborted fetuses. She also explained that taking the vaccine would make her complicit in the performance of abortions which would be "an

- 12 -

aberration to [her] Christian faith." Bazinet provided numerous quotations from religious sources that she says support her view. Accepting those allegations as true for present purposes, she has sufficiently pleaded a religious belief that conflicts with receiving the COVID-19 vaccine as required by the Policy.

The Hospital says otherwise, relying on Kiel v. Mayo Clinic Health Sys. Southeast Minnesota, 685 F. Supp. 3d 770 (D. Minn. 2023). There, the employee made a similar allegation that taking the vaccine "would make her a participant in the abortion that killed the unborn baby." Id. at 783. The district court ruled that the employee's allegation was not sufficiently religious because there are "[c]ertainly, many Christians who oppose abortion [who] still receive vaccines." Id. at 784. Thus, "religious opposition to abortion is different from an opposition to vaccines that were potentially developed using a fetal cell line." Id. (emphasis omitted).

After the Hospital filed its brief in this Court, the Eighth Circuit reversed Kiel. Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894 (8th Cir. 2024).[2] The Eighth Circuit properly rejected Kiel's rationale because the fact that many Christians have elected to receive the vaccine does not undermine a particular

---

[2] See also Savel v. MetroHealth Sys., 96 F.4th 932, 944 (6th Cir. 2024) (vacating order granting motion to dismiss Title VII religious accommodation claim over objection to taking COVID-19 vaccine).

- 13 -

employee's religious beliefs on the subject.  See id. at 901-02.
The law does not require that a religious practice or belief at
issue be "acceptable, logical, consistent, or comprehensible to
others."  EEOC v. Unión Independiente de la Autoridad de Acueductos
y Alcantarillados de P.R., 279 F.3d 49, 56 (1st Cir. 2002) (quoting
Thomas v. Rev. Bd. of Ind. Emp. Sec. Div., 450 U.S. 707, 714
(1981)).

Bazinet, like the employees in Ringhofer, grounded her
objection to taking the vaccine in a religious belief connecting
the COVID-19 vaccine to opposition to abortion.  Whether few or
many share that religious view is irrelevant.  For similar reasons,
it is also irrelevant at this stage of the litigation that the
Hospital tells us that Bazinet is mistaken in believing that the
COVID-19 vaccines were developed from fetal tissue obtained from
aborted fetuses.  That the Hospital disputes Bazinet's factual
foundation for her belief about the development of the vaccines
does not change the religious character of the belief.

The Hospital also says that Bazinet's objection is not
religious in nature because Bazinet asserted in her religious
accommodation form that she cannot "take part in any such vaccine
at this time."  The Hospital focuses on the "at this time" language
to contend that Bazinet rejected the vaccine on an "ad hoc basis,"
which, it says, is incompatible with religious belief.

The answer to this argument appears in the very next sentence of Bazinet's accommodation request. There, Bazinet asserted that the vaccines "currently available" were developed from aborted fetuses. There would be no inconsistency with Bazinet's claimed religious belief if she later agreed to take a COVID-19 vaccine that she viewed as not being developed from aborted fetuses. Thus, Bazinet's use of the "at this time" language is compatible with a professed religious belief based on her understanding of the present state of COVID-19 vaccine development.

In addition to claiming that Bazinet did not sufficiently plead that her objection to the vaccine was religious, the Hospital contends that Bazinet does not sincerely hold a religious belief against taking the vaccine. In this regard, the Hospital points out that much of Bazinet's complaint attacked the scientific efficacy of the COVID-19 vaccine, challenged the wisdom of the Hospital's Policy, and criticized the government for encouraging vaccine mandates. It says that these objections have nothing to do with religion. But, as the Eighth Circuit recognized, the mere fact that there is "overlap between a religious and political view does not [necessarily] place [the view] outside the scope of Title VII's religious protections." Ringhofer, 102 F.4th at 901. Thus, "[i]f an accommodation request can be read on its face as plausibly based in part on an aspect of

- 15 -

the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss." Passarella v. Aspirus, Inc., Nos. 23-1660, 23-1661, 2024 WL 3561180, at *4 (7th Cir. Jul. 29, 2024). That is the situation here.

In a similar vein, the Hospital challenges the sincerity of Bazinet's alleged religious belief because her request for accommodation "appears to have been largely cut-and-pasted from cookie-cutter, anti-vaccine forms that were widely available on the internet." That information is not properly before us at this preliminary stage because the internet printouts provided by the Hospital are not referred to in Bazinet's complaint. In any event, that Bazinet found information on the internet which coincided with her professed religious beliefs does not establish that her beliefs are insincere. The sincerity of Bazinet's religious belief is a proper subject for discovery, and it cannot be resolved at this early stage. See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005); Williams v. Wilkinson, 645 F. App'x 692, 699 n.12 (10th Cir. 2016); Robert v. Raytheon Tech. Corp., No. 23-cv-12206-NMG, 2024 WL 1809407, at *4 (D. Mass. Apr. 25, 2024).

The last issue we consider is the district court's alternative ground for dismissal, i.e., that the Hospital would suffer an undue hardship by granting Bazinet an accommodation from its mandatory vaccine requirement. The court's resolution of the

- 16 -

undue hardship question at the motion to dismiss stage was also premature.

Undue hardship in a Title VII religious discrimination case is an affirmative defense. Lowe, 68 F.4th at 719. "The undue hardship defense is built into the statutory definition of 'religion,' see 42 U.S.C. § 2000e(j), such that an employment action cannot constitute discrimination on the basis of religion, and an employer cannot be liable under Title VII for religious discrimination, if the undue hardship defense applies."[3] Lowe, 68 F.4th at 724. Undue hardship under Title VII requires employers "to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees." Sánchez-Rodríguez, 673 F.3d at 12 (quoting Unión Independiente, 279 F.3d at 55).

In a recent decision, the United States Supreme Court further defined what constitutes an undue hardship. See Groff v. DeJoy, 600 U.S. 447 (2023). Prior to Groff, we held, relying on Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), that an employer established an undue hardship by showing that an accommodation would pose "more than a de minimis cost." Cloutier, 390 F.3d at 134. We were hardly alone in applying that standard.

---

[3] Section 2000e(j) provides, "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

E.g., <u>Small</u> v. <u>Memphis Light, Gas & Water</u>, 952 F.3d 821, 825 (6th Cir. 2020); <u>Patterson</u> v. <u>Walgreen Co.</u>, 727 F. App'x 581, 586 (11th Cir. 2018); <u>Harrell</u> v. <u>Donahue</u>, 638 F.3d 975, 980 (8th Cir. 2011); <u>Webb</u> v. <u>City of Philadelphia</u>, 562 F.3d 256, 259-60 (3d Cir. 2009); <u>EEOC</u> v. <u>Firestone Fibers & Textiles Co.</u>, 515 F.3d 307, 312 (4th Cir. 2008); <u>Baker</u> v. <u>Home Depot</u>, 445 F.3d 541, 548 (2d Cir. 2006); <u>EEOC</u> v. <u>Ilona of Hungary, Inc.</u>, 108 F.3d 1569, 1576 (7th Cir. 1997); <u>Beadle</u> v. <u>Hillsborough Cty. Sherriff's Dep't</u>, 29 F.3d 589, 592 (4th Cir. 1994); <u>Lee</u> v. <u>ABF Freight Sys., Inc.</u>, 22 F.3d 1019, 1023 (10th Cir. 1994); <u>Heller</u> v. <u>EBB Auto Co.</u>, 8 F.3d 1433, 1440 (9th Cir. 1993); <u>Brener</u> v. <u>Diagnostic Ctr. Hosp.</u>, 671 F.2d 141, 146 (5th Cir. 1982).

<u>Groff</u> clarified that the standard is more rigorous than previously thought. It stated that a successful undue hardship defense requires the employer to show that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." <u>Groff</u>, 600 U.S. at 470. This requires courts to take "into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." <u>Id.</u> at 470-71 (cleaned up).

Dismissal under Rule 12(b)(6) on undue hardship grounds is appropriate only "if the facts establishing the defense are

- 18 -

clear on the face of the plaintiffs' pleadings and there is no doubt that the plaintiffs' claims are barred." Lowe, 68 F.4th at 719 (cleaned up). Lowe is a recent example of when dismissal for an undue hardship would be appropriate under Rule 12(b)(6).

Lowe involved a Maine law that imposed a COVID-19 vaccine mandate for healthcare workers that did not include religious exemptions. 68 F.4th at 719-22. It was undisputed that a health care provider, who violated the Maine law by granting religious exemptions to the vaccine requirement, would face a risk of license suspension by Maine authorities. Id. at 719-20. While Lowe was decided when Groff was pending in the Supreme Court, we held that, even under the heightened standard Groff eventually announced, potential license suspension for violating a state statute constituted an undue hardship as a matter of law. Id. at 722. Usually, however, it will not be possible to adjudicate the undue hardship defense at the pleading stage because the Groff test is "fact-specific." Groff, 600 U.S. at 468.

This case falls into the more usual category where conducting the undue-hardship evaluation requires further factual development. Unlike in Lowe, the Massachusetts vaccine mandate applicable to the Hospital does not bar religious exemptions. Thus, the Hospital would not have been breaking state law by granting Bazinet an accommodation. Taylor v. Milford Reg'l Med.

Ctr., Inc., No. 4:23-cv-40009-MRG, 2024 WL 2111459, at *6 & n.5 (D. Mass. May 10, 2024).

The parties dispute whether granting Bazinet an accommodation would cause an undue hardship for other reasons. The Hospital, on one hand, says that Bazinet was required to work in-person; thus, anything short of vaccination was an undue hardship because of the health and safety risks that it would pose to other employees and patients. Bazinet, on the other, alleges that the Hospital granted employees exemptions for medical reasons; thus, her request should have received more individualized consideration that could have led the Hospital to grant an accommodation.

The Hospital supplied the district court with a copy of a position statement it filed with the Equal Employment Opportunity Commission. The position statement sets forth the reasons that the Hospital decided to deny all religious accommodation requests from the vaccine requirement for employees whom it determined needed to work in person. The Hospital appended to the position statement several exhibits, including the Policy, Bazinet's job description, her religious accommodation request, and a memorandum describing the Hospital's process for reviewing accommodation requests that included conclusions as to when, in the Hospital's view, granting an accommodation constitutes an undue hardship. While the district court could consider Bazinet's accommodation

request and the Policy because those documents were sufficiently referenced in Bazinet's complaint, neither document demonstrates on its face that granting Bazinet an accommodation would have caused the Hospital an undue hardship. See Lowe, 68 F.4th at 719.

The remaining documents, including the Hospital's position statement and attached memorandum articulating the Hospital's explanation for its undue hardship conclusion, were not referenced in Bazinet's complaint. Thus, these documents were not properly before the district court at the Rule 12(b)(6) stage.[4] And Bazinet of course has not had the chance to contest the Hospital's assertions about the costs that would flow from granting her a religious accommodation to the vaccine requirement. More factual development is necessary.

* * *

Whether Bazinet's religious discrimination claims will succeed or even survive summary judgment is uncertain. But these claims should have advanced past Rule 12(b)(6). Accordingly, we **vacate** the district court's order dismissing Bazinet's religious discrimination claims and **remand** for further proceedings consistent with this opinion. The parties shall bear their own costs.

**So Ordered**.

---

[4] While Bazinet's complaint refers to the Policy specifically on numerous occasions, and "policies and procedures" generally on several others, it does not mention the Hospital's memorandum supporting its undue hardship conclusion.

- 21 -