**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1157, 24-1248, 24-1249, 24-1250, 24-1251, 24-1252, 24-1253 & 24-1254
_____

BETH A. MCDOWELL,
                         Appellant in No. 24-1157

v.

BAYHEALTH MEDICAL CENTER, INC
_____

SHARITI A. LANE,
                         Appellant in No. 24-1248

v.

BAYHEALTH MEDICAL CENTER, INC
_____

DONNA L. MAHER,
                         Appellant in No. 24-1249

v.

BAYHEALTH MEDICAL CENTER, INC
_____

SEAN MCCARTHY,
                         Appellant in No. 24-1250

v.

BAYHEALTH MEDICAL CENTER, INC
_____

JANELLE B. CARUANO,

Appellant in No. 24-1251

v.

BAYHEALTH MEDICAL CENTER, INC
_____

CHERYL L. HAND,
              Appellant in No. 24-1252

v.

BAYHEALTH MEDICAL CENTER, INC
_____

ANDREA L. MALONEY,
              Appellant in No. 24-1253

v.

BAYHEALTH MEDICAL CENTER, INC
_____

TAMMY M. HARVEY,
              Appellant in No. 24-1254

v.

BAYHEALTH MEDICAL CENTER, INC
_____

On Appeal from the United States District Court
for the District of Delaware
(Nos. 1-22-cv-01392, 1-23-cv-00102, 1-22-cv-01551, 1-22-cv-01336, 1-22-cv-01284, 1-22-cv-01548, 1-23-cv-00078, 1-23-cv-00092)
U.S. District Judge: Honorable Richard G. Andrews
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 30, 2024
_____

Before:  SHWARTZ, MATEY, and SCIRICA, Circuit Judges.

2

_____

OPINION*

_____

**SHWARTZ**, <u>Circuit Judge</u>.

Defendant Bayhealth Medical Center, Inc. ("Bayhealth") required its employees to receive a COVID vaccine as a condition of employment, absent a religious or medical exemption. Plaintiffs, former Bayhealth employees, objected to the requirement based on their assertions that receiving the vaccine would be inconsistent with their religious beliefs, principally, their belief that their bodies are G-d's temples. After Bayhealth denied their requested religious exemptions, Plaintiffs sued for religious discrimination under 42 U.S.C. § 2000e-2(a)(1) ("Title VII") and, in some instances, state law. The District Court dismissed their complaints, concluding that, despite Plaintiffs' generalized references to scripture, their concerns were medical, scientific, personal, or secular in nature, rather than religious. Because we agree with the District Court's assessment of the pleadings, we will affirm.

I[1]

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We exercise plenary review of an order granting a motion to dismiss for failure to state a claim. <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220 (3d Cir. 2011). We must determine whether the complaint, construed "in the light most favorable to the plaintiff," <u>Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.</u>, 768 F.3d 284, 290 (3d Cir. 2014) (citation omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" <u>Ashcroft v. Iqbal</u>, 556 U.S.

In religious objection cases, courts must examine whether a belief is a religious one, as opposed to a personal belief cloaked in religion. See Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972) (holding that where a plaintiff's asserted beliefs are based on a "subjective evaluation and rejection of the contemporary secular values accepted by the majority," a claim derived therefrom "would not rest on a religious basis"); Africa v. Pennsylvania, 662 F.2d 1025, 1031, 1035 (3d Cir. 1981) (concluding that plaintiffs cannot use religion to claim a "blanket privilege" or "cloak[] with religious significance" a secular belief); see also United States v. Seeger, 380 U.S. 163, 165 (1965) (concluding beliefs that are "essentially political, sociological, or philosophical views" are not religious); Fallon v. Mercy Cath. Med. Ctr. of Se. Pa., 877 F.3d 487, 491 n.14 (3d Cir. 2017) (describing Title VII regulations as "adopting the standard in Seeger"). In Fallon, for example, we examined a Title VII religious discrimination claim where a medical center terminated an employee for refusing the flu vaccine. See 877 F.3d at 488. We concluded that the employee's concerns with the sanctity of his own body and that the vaccine "might do more harm than good" was based on "a medical belief," and therefore, the plaintiff's "anti-vaccination beliefs [we]re not religious[,]" notwithstanding that he "attributed" his beliefs "to the founder of Buddhism[.]" Id. at 492; accord Mason v. Gen. Brown Cent. Sch. Dist., 851 F.2d 47, 48-52 (2d Cir. 1988) (rejecting parental objections to school vaccine mandates based on purportedly religious beliefs that the body can heal

662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012).

itself and that vaccines defile one's body because such beliefs were personal rather than religious).[2] The same principles apply here.

Plaintiffs principally contend that their faith teaches that their bodies are G-d's temples, and that receiving the vaccine violates that religious teaching.[3] Thus, we must decide whether Plaintiffs' objections to the vaccine are best classified as either (1) personal, secular, or medical, or (2) religious.

---

[2] Our dissenting colleague cites out-of-circuit cases for the proposition that Plaintiffs may survive a motion to dismiss simply by invoking scripture. See Dissent at *4 (citing Lucky v. Landmark Med. of Mich., P.C., 103 F.4th 1241, 1243 (6th Cir. 2024); Ringhofer v. Mayo Clinic, 102 F.4th 894, 901-02 (8th Cir. 2024); Passarella v. Aspirus, Inc., 108 F.4th 1005, 1009 (7th Cir. 2024)). Those opinions, however, do not address the plaintiffs' failures to connect general religious beliefs with the conduct underlying the purported discrimination. More importantly, those courts are not bound by our precedents in Africa and Fallon that prohibit blanket religious privileges. See infra § II. One of our sister circuits recently cited Fallon and held that an employee's assertions that, among other things, she has a "religious obligation to treat her body as a 'temple'" was insufficient "to show a conflict between her religion and the" employer's COVID vaccine and testing policy. DeVore v. Univ. of Ky. Bd. of Trs., -- F.4th --, 2024 WL 4471281, at *4 n.1, *5-6 (6th Cir. Oct. 11, 2024). Additionally, our colleagues' citation to Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9 (1st Cir. 2024), is misplaced as that case involved a vaccine objection based on a plaintiff's opposition to abortion, which (1) is not present here, and (2) mirrors the types of claims the District Court allowed to proceed. See infra n.7.

[3] See App. 214 (McDowell stating "[m]y body is the temple of the Holy Spirit who lives within me, whom I received from G[-]d. I believe that G[-]d wants me to protect and purify this body (His temple) not to cause it any harm or contamination, nor do anything to shorten it's [sic] life expectancy."); App. 218 (Lane quoting 1 Corinthians 6:19, "do you not know that your body is a temple of the Holy Spirit within you, whom you have from G[-]d?"); App. 221 (Maher quoting 2 Corinthians 6:16, "[f]or we are the temple of the living G[-]d"); App. 225 (McCarthy stating that "a Christian sincerely believes that his or her body is the living temple of the Holy Spirit of G[-]d"); App. 231 (Caruano citing scripture about "bodies [as] temples of the Holy Spirit"); App. 239 (Hand claiming "the Bible states the body is the temple of the Holy Spirit"); App. 241 (Maloney stating "Christians have a duty to honor and care for the body G[-]d has given us as a temple of the Holy Spirit"); App. 245 (Harvey citing 1 Corinthians 6:19, "your body is a temple of the Holy Spirit").

5

Plaintiffs assert that taking the vaccine would violate scripture because they believe the vaccine is unsafe, toxic, or harmful. **See App. 214, 217-19, 221, 225-29, 231-32, 239-45.** These beliefs, however, do not provide facts from which we can plausibly infer that Plaintiffs' objections to the vaccine are based on religious beliefs and not on their personal, secular, and medical beliefs about the efficacy and safety of the vaccine.[4] See Yoder, 406 U.S. at 216 (observing that a "subjective evaluation and rejection of the contemporary secular [and medical] values accepted by the majority" are claims that "would not rest on a religious basis"). Indeed, Plaintiffs' allegations give rise to, at most, the "mere possibility" that Plaintiffs' religious beliefs informed their objections to the vaccine. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citation omitted). Therefore, Plaintiffs have not plausibly alleged a sufficient nexus between their religious beliefs about their bodies being G-d's temples and their objections to the vaccine.[5]

---

[4] See, e.g., App. 227, 229 (McCarthy stating that "I do not have a problem with putting some medicines or vaccines into my body that have been proven over time to 1) be effective and 2) to have no adverse medical effects. This vaccine has not had the time or track record, as of yet, to provide this comfort level to me . . . . I am potentially not even against this covid 19 vaccine. There has simply not been enough time and documented results of this vaccine to give me a comfort level that it is something that me, or my family should put into our bodies."); App. 243 (Harvey stating that she is "not opposed to all vaccines/immunizations," which suggests she makes medical/secular evaluations of which vaccines she deems acceptable).

[5] Certain Plaintiffs also contend that they are created in G-d's image with a G-d-given immune system, that G-d guides them and informs their conscience, that altering one's DNA is contrary to their religious teachings, or some combination thereof. See App. 219 (Lane stating that "[t]he Bible states that I should visit the doctor when I am sick, not well"); App. 221 (Maher discussing her "natural immunity" and "G[-]d-given immune system"); App. 231-32 (Caruano stating humans "are made in the image of G[-]d" and that she cannot take the vaccine because she "cannot do anything to alter" her

6

Moreover, concluding that Plaintiffs state a claim by broadly invoking an overarching religious belief without directly connecting that religious belief to the objected-to employment term would impermissibly "cloak[] with religious significance" a fundamentally secular objection to an employment term, and thereby create a "blanket privilege" whenever an employee invokes scripture. Africa, 662 F.2d at 1031, 1035. To allow this would be contrary to "ordered liberty,"[6] "the very concept of [which] precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." Yoder, 405 U.S. at 216. Indeed, to allow such generalized objections would leave "almost no limit to the accommodations that an employer would have to entertain under Title VII's ban on religious discrimination[,]" Passarella v. Aspirus, Inc., 108 F.4th 1005, 1014 (7th Cir. 2024) (Rovner, J., dissenting). Specifically, claiming one's body is G-d's temple is "a high-level, religiously-inspired

_____

body and the "vaccine will alter or change my immune system given to me by G[-]d"); App. 239 (Hand stating her belief that the vaccine "increases the probability that it will be integrated into your DNA"); App. 241 (Maloney stating that because she believes the vaccine has "the potential of altering my body and mind" taking the vaccine goes against her "conscious" which is "governed by G[-]d" and something she is "morally required to obey"); App. 245 (Harvey stating conclusorily that "accepting the vaccine would be a violation of my conscious and relationship with G[-]d"). These objections are likewise rooted in personal, secular, scientific, or medical views about the vaccine and its impact on their bodies in ways that are unconnected to their overarching religious beliefs, and thus, those additional allegations are, for the same reasons, insufficient under the governing precedent to support a religious discrimination claim. See Yoder, 406 U.S. at 216; Africa, 662 F.2d at 1031, 1033-34; Fallon, 877 F.3d at 492; see also DeVore, -- F.4th --, 2024 WL 4471281, at *5-6 (holding conclusory allegations were insufficient "to show a conflict between [plaintiff's] religion and the [employer's COVID] [p]olicy").

[6] "Ordered liberty" is the principle that rights may be restricted in certain circumstances so long as those restrictions are not "arbitrary impositions and purposeless restraints." Washington v. Glucksberg, 521 U.S. 702, 765 (1997) (Souter, J., concurring) (internal quotation marks and citation omitted).

7

goal: treat one's body well[,]" id. (Rovner, J., dissenting). Even viewing the objection as religiously inspired, a "concern that [a] vaccine may do more harm than good [] is a medical belief, not a religious one[,]" and a "general moral commandment" drawn from religion cannot transform a medical objection into a religious one. Fallon, 877 F.3d at 492. For this additional reason, each Plaintiff has failed to provide a basis for relief.[7]

II

For the foregoing reasons, we will affirm.[8]

---

[7] The fact that the District Court allowed the religious discrimination complaints by other Bayhealth employees to proceed past the pleading stage demonstrates that the Court understood the pleading requirements for these claims. In those cases, the District Court denied Bayhealth's motions to dismiss in cases where the employees' objected to taking the vaccine based upon their religious objections to abortion. The Court observed that the objection was tied to the religious belief that life begins at conception and that alleged use of fetal tissue in the development of the vaccine violated the belief about when life begins and therefore taking such a vaccine would also violate this religious belief. See M. White v. Bayhealth Med. Ctr., Inc., Civ. No. 22-1518, 2024 WL 325334, at *4 (D. Del. Jan. 29, 2024); Countey v. Bayhealth Med. Ctr., Inc., Civ. No. 23-616, slip op. at 4-6 (D. Del. Jan. 29, 2024); Griffin v. Bayhealth Med. Ctr., Inc., Civ. No. 23-257, 2024 WL 325272, at *4 (D. Del. Jan. 29, 2024); Thompson v. Bayhealth Med. Ctr., Inc., Civ. No. 22-1519, 2024 WL 325288, at *4 (D. Del. Jan. 29, 2024); Thornton v. Bayhealth Med. Ctr., Inc., Civ. No. 23-944, 2024 WL 325326, at *4 (D. Del. Jan. 29, 2024); Wharton v. Bayhealth Med. Ctr., Inc., Civ. No. 23-110, 2024 WL 325333, at *4 (D. Del. Jan. 29, 2024); K. White v. Bayhealth Med. Ctr., Inc., Civ. No. 22-1457, 2024 WL 307692, at *4 (D. Del. Jan. 26, 2024); Aiken v. Bayhealth Med. Ctr., Inc., Civ. No. 23-37, 2024 WL 278182, at *4 (D. Del. Jan. 25, 2024); Hernandez v. Bayhealth Med. Ctr., Inc., Civ. No. 22-1283, 2024 WL 278180, at *4 (D. Del. Jan. 25, 2024); Proud v. Bayhealth Med. Ctr., Inc., Civ. No. 22-1472, 2024 WL 278216, at *4 (D. Del. Jan. 25, 2024); Massotti v. Bayhealth Med. Ctr., Inc., Civ. No. 22-1471, 2024 WL 278208, at *4 (D. Del. Jan. 25, 2024).

[8] Plaintiffs' state law claims require the same proof as Title VII and fail for the same reasons. See Schuster v. Derocili, 775 A.2d 1029, 1033 (Del. 2001).

**MATEY**, *Circuit Judge*, dissenting.

Plaintiffs allege that Bayhealth Medical Center discriminated against their religious beliefs by denying an exemption from a mandatory COVID-19 vaccine. The District Court dismissed the complaints with prejudice for failure to state a claim. But Plaintiffs have satisfied their minimal pleading burden, so I respectfully dissent.

## I.

On a motion to dismiss, "we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Accordingly, if a "plaintiff may be entitled to relief" "under any reasonable reading of the complaint," then a motion to dismiss fails. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

Plaintiffs are former Bayhealth employees and Christians of various denominations. Following the arrival of COVID-19, Bayhealth required all employees to submit to mandatory vaccine injections. Plaintiffs believe that an individual should not harm the human body because it is sacred, and requested religious exemptions "[a]fter careful discernment, prayerfully seeking God, and reading [the] Bible." App. 231.

Bayhealth denied Plaintiffs' requests and terminated Plaintiffs when they declined COVID-19 vaccine injections. Plaintiffs then sued Bayhealth for religious discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1), seeking monetary damages, reinstatement, and attorney's fees. The District Court granted Bayhealth's motions to dismiss the

complaints with prejudice, finding that Plaintiffs failed to allege facts showing that their objections to the COVID-19 vaccine were religious.

## II.

Title VII "requires employers to accommodate the religious practice of their employees." *Groff v. DeJoy*, 600 U.S. 447, 453 (2023). As defined by Title VII, "religion" "includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j); *see also EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) (emphasizing that "religion" as defined by Title VII extends beyond "religious *belief*" to encompass "religious *practice*"). Accordingly, to state a claim for religious discrimination under Title VII based on a failure to accommodate, the employee must plausibly allege "that (1) he held a sincere religious belief that conflicted with a job requirement, (2) he informed his employer of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017).[1]

---

[1] The Complaint follows the guidelines of the Equal Employment and Opportunity Commission defining religion "to include moral ethical beliefs as to what is right and wrong which are held with the strength of traditional religious views." 29 C.F.R. § 1605.1. That standard accepts decades of judicial decisions embracing a conception of religious liberty that prioritizes "inwardness, solipsism and absolute autonomy[.]" Marc. O. DeGirolami, *The Sickness Unto Death of the First Amendment*, 42 Harv. J. L. & Pub. Pol'y 751, 779–80 (2019). But it does not follow the traditional understanding of religion which "consists in offering service and ceremonial rites to a superior nature that men call divine.'" Thomas Aquinas, *Summa Theologiae*, II-II Q. 82, a. 1, s.c. (Aquinas Inst. ed., 2012) (quoting Marcus Tullius Cicero, *Rhetoric*, ii, 53); *accord* 2 James Madison, *Memorial and Remonstrance Against Religious Assessments*, *in* The Writings of James Madison 184 (Gaillard Hunt ed., 1901) (1785) (defining religion as "the duty which we owe to our Creator and the Manner of discharging it."). This classical correlation between the organized practice of religion and the individual duty to God animated the Founding era,

2

Accepting Plaintiffs' allegations as true, Plaintiffs requested religious exemptions from the vaccination requirement, Bayhealth denied those requests, and Plaintiffs were terminated because they declined vaccination. All that remains is whether Plaintiffs pled sufficient facts to support an inference that their objections to vaccination were an "aspect[]" of their "religious observance," "practice," or "belief." 42 U.S.C. § 2000e(j). In my view, Plaintiffs have sufficiently alleged that their objections were tied to their religious beliefs.

Plaintiffs pled that their bodies are sacred, and that vaccination would compromise that sacrosanct quality. *See* 42 U.S.C. 2000e(j) (protecting religious beliefs regardless of faith tradition). Plaintiffs' ground their objections in Scripture. And they allege that prayer, discernment, and Scriptural study informed their decision. These allegations connect their vaccination objections to their religious principles and raise a plausible inference of protected religious belief under Title VII. *See Lucky v. Landmark Med. of Mich., P.C.*, 103 F.4th 1241, 1243–44 (6th Cir. 2024); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901–02 (8th Cir. 2024); *Passarella v. Aspirus, Inc.*, 108 F.4th

---

*see generally*, Vincent Philip Munoz, *Religious Liberty and the American Founding* (2022) and endured throughout the 19th century, *see Davis v. Beason*, 133 U.S. 333, 342, 10 S. Ct. 299, 300, 33 L. Ed. 637 (1890) ("The term 'religion' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will."), *abrogated on other grounds by Romer v. Evans*, 517 U.S. 620, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996). Only recently have courts broadened "the definition of 'religion' to encompass more than formal doctrines of theology," a move that would "push on eventually to a legal understanding of 'religion' that was virtually indistinguishable from 'private beliefs' of any kind." Hadley Arkes, *First Things: An Inquiry into the First Principles of Morals and Justice* 192 (1986). That change in course, and its deviation from classical principles, deserves a deeper examination in a suitable case.

3

1005, 1009 (7th Cir. 2024); *Bazinet v. Beth Isr. Lahey Health, Inc.*, 113 F.4th 9, 15–18 (1st Cir. 2024).

The District Court erred by parsing Plaintiffs' religious beliefs, stating that Plaintiffs "fail[ed] to explain how [their] religious beliefs lead to the conclusion that the COVID-19 vaccine will cause harm to [their] bod[ies]." App. 52. But further explanation is unnecessary at this stage of the case because Plaintiffs' alleged facts "allow[] the court to draw the reasonable inference" that the beliefs in question were religious. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, on a motion to dismiss, Plaintiffs' allegations, when accepted as true, are enough to establish that their refusals to vaccinate were "aspects" of their "religious observance." 42 U.S.C. § 2000e(j).

Likewise, the District Court erred when it determined Plaintiffs' objections were medical, not religious. "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989). Nor may "a judge's disbelief of a complaint's factual allegations" "countenance" dismissal on a motion to dismiss. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). And "courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." *Emp. Div., Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872, 887 (1990).[2]

---

[2] Our decision in *Fallon* is not to the contrary. There, the objector to a flu vaccine "strongly believe[d] that the flu vaccine may do more harm than good" and alleged that accepting the injection "would violate his conscience as to what is right and what is wrong." 877 F.3d at 492. Though he alleged he "must follow his conscience," he did not

Concerns that Plaintiffs' beliefs are insincere or disingenuous attack the merits, not the sufficiency of the pleadings. For now, we consider only the "facial plausibility" of the claim, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), not "whether a *prima facie* case has been made," which "is an evidentiary inquiry," *id.* at 213. Accordingly, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Plaintiffs have pled with sufficient specificity so that their claims have "facial plausibility," making dismissal improper. *Fowler*, 578 F.3d at 210. Accordingly, I respectfully dissent.

---

allege "that these beliefs address fundamental and ultimate questions having to do with deep and imponderable matters." *Id*. Such individual concerns untethered to "traditional faith" amounted to "medical belief[s]," not religion. *Id*. That is not the case here. *See id.* at 492–93. ("[I]n some circumstances," "anti-vaccination beliefs" could "be part of a broader religious faith.").